John Richard CAIN, Appellant,

v.

Jamie PRUETT and Bonnie West, Appellees.

No. 05–95–01439–CV.

Court of Appeals of Texas, Dallas.

Dec. 23, 1996.

Rehearing Overruled Feb. 13, 1997.

David W. Whitehurst, Robert Keith Drummond, Dennis L. Roossien, Jr., Strasburger & Price, L.L.P., Dallas, for Appellant.

Johnny R. Brown, Attorney at Law, Gary D. Corley, Jim Clements, Stagner & Corley, Sherman, for Appellees.

Before MORRIS, JAMES, and WOLFE, JJ.

## OPINION

WOLFE, Justice.

Jamie Pruett and Bonnie West sued John Richard Cain, the owner of a McDonald's restaurant, claiming that they were injured when they consumed soft drinks containing shattered glass fragments. A jury found in favor of Pruett and West and awarded them a total of $1,525 in actual damages and $29,250 in attorney's fees. The trial court eventually entered an amended judgment that trebled the damages and added $50,000 in appellate attorney's fees. In seventeen points of error, Cain contends generally that the trial court erred in (1) refusing to find that his settlement offer precluded any award of attorney's fees under the Texas Deceptive Trade Practices Act (DTPA); (2) denying his motion for new trial and awarding attorney's fees to Pruett and West in the face of insufficient evidence to support such an award; (3) awarding Pruett and West appellate attorney's fees when the jury awarded none; (4) awarding Pruett and West more than actual damages; (5) awarding prejudgment interest on attorney's fees and treble damages; and (6) overruling his *Edmonson* challenge. We reform the judgment in part. As reformed, we affirm the judgment of the trial court.

On October 30, 1991, Pruett and West were eating lunch at a McDonald's franchise owned and operated by Cain in Denison, Texas. Both women testified that while consuming soft drinks they bit down on glass fragments. They spit out the fragments and

immediately complained to a restaurant employee who, in turn, notified the restaurant shift manager, Tasha Moore.

Moore went to the women's table where she saw two napkins containing glass fragments which the women said they found in their drinks. Moore kept a fragment of the glass which was produced at trial. Moore informed the women that earlier that morning the maintenance man was changing a fluorescent light bulb in the rear area of the restaurant near the ice bin. A box containing a bulb tipped over, and the bulb broke. However, Moore claimed that this accident could not have accounted for the glass in the drinks because she immediately cleaned and double-checked the rear area for glass fragments. Moore refunded the women's money. She called Maurine Cain, Cain's wife, who suggested that Pruett and West go to a nearby medical center. Ms. Cain met them at the medical center and asked about their condition, and there was conflicting testimony as to whether Ms. Cain offered to pay any medical bills.

Subsequently, Pruett and West incurred dental bills and bills for medical tests which they claimed were necessitated by the incident at Cain's restaurant. The doctors' examinations on the day of the incident and afterwards indicated some dental problems and throat irritation, but no glass other than the piece saved by the restaurant manager was produced at trial, and there was no evidence that either woman sustained any internal injury.

On October 21, 1993, Pruett and West filed separate lawsuits against Cain. By letters dated November 11, 1993, and February 4, 1994, Cain offered to settle Pruett's and West's claims for a total of approximately $7,000. These settlement offers did not include offers to pay reasonable attorney's fees. Pruett and West continued to pursue their claims against Cain, and on December 7, 1994, each filed a first amended original petition stating for the first time claims under the DTPA. Cain's settlement offers remained in effect, but they were not amended to include an offer to pay reasonable attorney's fees.

At trial, Cain's counsel raised an *Edmonson* challenge when Pruett's counsel struck the sole African–American venireperson. At a hearing on the matter, Pruett's counsel explained that the potential juror appeared too conservative and hesitated in giving his opinion on pain and suffering or mental anguish damages. The *Edmonson* challenge was overruled.

Along with the evidence regarding Pruett's and West's injuries, counsel for the two women put on evidence of their reasonable attorney's fees. This evidence consisted of testimony by Gary Corley, counsel for Pruett, that his rates were reasonable and that his fees up to the first day of trial totaled $11,937.50. He also stated that he had a contingency fee arrangement with Pruett under which he would receive forty percent of Pruett's recovery. Corley further testified that $7,500 would be a reasonable fee for an appeal to the court of appeals, $2,500 would be a reasonable fee for filing an application for writ of error in the Texas Supreme Court, and $5,000 would be a reasonable fee to argue the case before the Texas Supreme Court if the writ were granted. Johnny Brown, counsel for West, elicited testimony from Corley showing that Brown had performed essentially the same services for his own client.

The jury found that the negligence of an employee of Cain proximately caused injuries to Pruett and West and that the failure of one of Cain's employees to comply with a warranty was a producing cause of Pruett's and West's damages. The jury awarded $1,002.50 to Pruett and $522.50 to West for loss of earnings and medical care. In addition, the jury awarded attorney's fees of $15,000 to Pruett and $14,250 to West. The jury made no award of appellate attorney's fees.

After the verdict, counsel for Pruett and West submitted a proposed judgment to the trial court without first showing a copy of that document to counsel for Cain. The court signed the judgment as presented. The judgment awarded Pruett "actual damages" of $20,867.27 and West "actual damages" of $19,202.85. The judgment did not award any appellate attorney's fees. This judgment did not satisfy any of the litigants. Cain moved

for a new trial. Alternatively, he moved for entry of a modified judgment limited to the actual damages as found by the jury. Pruett and West also moved to modify the original judgment by trebling the first $1,000 of actual damages and moved for judgment notwithstanding the verdict on the issue of appellate attorney's fees.

Counsel for Pruett and West unilaterally submitted a proposed amended judgment that the court signed as submitted. This amended judgment awarded compensation for medical expenses, loss of earnings, attorney's fees, and prejudgment interest in the total amount of $24,757.86 to Pruett and $22,-053.62 to West. The amended judgment also awarded Pruett and West $25,000 each for appellate attorney's fees. Cain brings this appeal from the amended judgment. At oral argument, Corley, counsel for Pruett, stated that a typographical error committed by someone at his office led to the inclusion of the $50,000 award for appellate attorney's fees.

Pruett's and West's claims for attorney's fees and treble damages are predicated upon a finding that Cain violated the DTPA. Tex. Bus. & Com.Code Ann. §§ 17.01–.826 (Vernon 1987 & Supp.1997). On appeal, Cain argues that his settlement offer precludes an award of attorney's fees, treble damages, and some prejudgment interest. In the alternative, Cain argues that the evidence is insufficient to support the jury's finding regarding attorney's fees.

■ The DTPA makes unlawful "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or business." Tex. Bus. & Com.Code Ann. § 17.46(a) (Vernon 1987). A consumer may maintain an action under the DTPA where breach of an express or implied warranty constitutes a producing cause of economic damages or damages for mental anguish. Id. § 17.50(a)(2). In this case, the jury found that a breach of warranty was a producing cause of both Pruett's and West's damages. Thus, the DTPA applies to this case.

■ Under the DTPA, a settlement offer must be in writing and must include an agreement to reimburse the consumer for reasonable attorney's fees. Id. § 17.505(c); Cail v. Service Motors, Inc., 660 S.W.2d 814, 815 (Tex.1983) (interpreting the same provision formerly codified at § 17.50A(b)). If the amount tendered in the settlement offer is the same or substantially the same as the actual damages found by the trier of fact, the consumer may not recover an amount in excess of the amount tendered in the settlement offer or the amount of actual damages found by the trier of fact, whichever is less. Id. § 17.505(d). Thus, a proper settlement offer precludes an award of damages and attorney's fees in excess of the offer.

■ The settlement offers in this case did not conform to the requirements of section 17.505(c) because the offers did not include an agreement to reimburse Pruett and West for their reasonable attorney's fees. As a result, these offers do not limit the recovery of damages or attorney's fees. Cain's points of error five, nine, twelve, and sixteen are overruled.

Nevertheless, Cain's settlement offers impact the calculation of prejudgment interest. Generally, judgments in personal injury cases must include prejudgment interest. Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 6(a) (Vernon Supp.1997). Prejudgment interest accrues on the amount of the judgment beginning on the 180th day after the defendant receives written notice of a claim or on the day the suit is filed, whichever occurs first, and ending on the day preceding the date judgment is rendered. Id. If judgment for a claimant is less than a settlement offer by the defendant, however, prejudgment interest does not accrue on the amount of the judgment for the period during which the offer may be accepted. Id. § 6(b).

In the instant case, Cain first received written notice of Pruett's and West's claims by letter dated January 24, 1992. Cain made no settlement offer until November 11, 1993. This settlement offer was in the amount of $7,000, more than four times the amount of the actual damages awarded by the jury. Because the jury award was less than the settlement offer, no prejudgment interest accrued for the period during which the offer could have been accepted. Thus, prejudgment interest began to accrue on July 23,

1992, 180 days after the written notice on January 24, 1992, and stopped on November 11, 1993, a period of 476 days or 1.3 years.

■ Prejudgment interest is not recoverable on attorney's fees awarded. *Hervey v. Passero,* 658 S.W.2d 148, 148–49 (Tex. 1983); *Cushman and Wakefield, Inc. v. Fletcher,* 915 S.W.2d 538, 547 (Tex.App.—Dallas 1995, writ denied); *Berry Property Management, Inc. v. Bliskey,* 850 S.W.2d 644, 670 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.). In addition, prejudgment interest is not recoverable on the trebled amount of DTPA damages. *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 137 (Tex.1988). Thus, prejudgment interest is recoverable only on the amounts awarded by the jury in this case: $1,002.50 for Pruett and $522.50 for West. By statute, the applicable interest rate is ten percent simple interest. TEX.REV.CIV.STAT. ANN. art. 5069–1.05, § 6(g) (Vernon Supp. 1996). Accordingly, Pruett is entitled to $130.73 in prejudgment interest, and West is entitled to $68.14. We sustain Cain's points of error three, six, seven, eight, ten, thirteen, fourteen, and fifteen.

Cain complains generally of the manner in which the trial court applied the treble damages provision of the DTPA. When a party prevails on a breach of express or implied warranty under the DTPA, that party is entitled to the amount of actual damages as found by the trier of fact. TEX.BUS. & COM. CODE ANN. § 17.50(b)(1) (Vernon 1987). In addition, the court shall award two times that portion of the actual damages that does not exceed $1,000. *Id.* If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000. *Id.* In this case, the issue of whether the breach of warranty was "knowing" was not submitted to the jury. Thus, Cain's conduct cannot be considered knowing, and only two times the first $1,000 of actual damages can be added to the amount of actual damages as found by the trier of fact.

■ "Actual damages," though not defined by the DTPA, means damages recoverable at common law. *Brown Found. Repair & Consulting, Inc. v. Friendly Chevrolet Co.,* 715 S.W.2d 115, 119 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Raye v. Fred Oakley Motors Inc.,* 646 S.W.2d 288, 290 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). In the absence of a contract to the contrary, the general common-law rule requires parties to compensate their own attorneys. *Brown,* 715 S.W.2d at 119. Attorney's fees are thus not "actual damages" under the DTPA. However, prejudgment interest is part of actual damages subject to trebling under the DTPA. *See Indust–Ri–Chem Lab., Inc. v. Par–Pak Co.,* 602 S.W.2d 282, 298 (Tex.Civ. App.—Dallas 1980, no writ). Accordingly, Pruett's actual damages are $1,133.23 and West's actual damages are $590.64, comprised of the damages found by the jury plus prejudgment interest. After trebling only the first $1,000, Pruett's total damages are $3,133.23 and West's total damages are $1,771.92.

■ In addition, each consumer who prevails under the DTPA shall be awarded court costs and attorney's fees. TEX.BUS. & COM.CODE ANN. § 17.50(d) (Vernon 1987). An award of attorney's fees must be reasonable. *See David McDavid Pontiac, Inc. v. Nix,* 681 S.W.2d 831, 838 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Except where the reasonableness of attorney's fees may be presumed, their reasonableness is a fact question and must be supported by competent evidence. *Smith v. Smith,* 757 S.W.2d 422, 424 (Tex.App.—Dallas 1988, writ denied). An attorney's testimony concerning the time spent and the attorney's hourly charge is considered reasonably sufficient evidence to support an attorney's fee award under the DTPA. *See Id.* at 426–27; *David McDavid Pontiac,* 681 S.W.2d at 838. In this case, the attorneys for Pruett and West testified regarding the amount and the reasonableness of their fees. Based on this testimony, the jury awarded attorney's fees of $15,000 to Pruett and $14,250 to West.

■ Cain complains that the evidence was legally and factually insufficient to support the award of attorney's fees. When both legal and factual sufficiency points of error are raised, the court of appeals must

first examine the legal sufficiency of the evidence. *Glover v. Texas Gen. Indem.*, 619 S.W.2d 400, 401 (Tex.1981). In addressing a legal sufficiency or no evidence challenge, we must consider only the evidence and inferences, viewed in their most favorable light, that support the jury's finding, and we must disregard all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). If any evidence of probative value supports the jury verdict, we overrule a no evidence point of error. *Int'l Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex.1985). If there is more than a scintilla of evidence to support the finding, then the no evidence challenge fails. *Stafford*, 726 S.W.2d at 16.

When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex.1970). However, if the evidence supplies some reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact, then there is some evidence. *Kindred*, 650 S.W.2d at 63.

In addressing a factual sufficiency of the evidence challenge upon a jury verdict, an appellate court must consider and weigh *all* of the evidence, not just that evidence which supports the verdict. *City of Princeton v. Abbott*, 792 S.W.2d 161, 163 (Tex. App.—Dallas 1990, writ denied). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985); *Gregory v. Sunbelt Sav.*, 835 S.W.2d 155, 158 (Tex.App.—Dallas 1992, writ denied).

However, this Court is not a fact finder, and we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). The trier of fact assesses the credibility of the witnesses and the weight to be given their testimony and can accept all, part, or none of the testimony or may make its own deductions from the evidence. *See Aloe Ltd., Inc. v. Koch*, 733 S.W.2d 364, 367 (Tex.App.—Corpus Christi 1987, no writ). The jury, as the trier of fact, has the responsibility to judge the witnesses' credibility, to assign the weight to their testimony, and to resolve any inconsistencies in the testimony. *Perry v. Perry Bros., Inc.*, 753 S.W.2d 773, 776 (Tex.App.—Dallas 1988, no writ). The jury may accept or reject all or part of the witnesses' testimony. *See Service Lloyds Ins. Co. v. Martin*, 855 S.W.2d 816, 822 (Tex.App.—Dallas 1993, no writ).

After reviewing the record in this case in the light most favorable to the jury's verdict, we conclude that the evidence supplies a reasonable basis for the jury's finding of attorney's fees. Considering all the evidence, not just the evidence most favorable to the verdict, we conclude that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The jury had an opportunity to assess the credibility of the witnesses and the weight to be given their testimony. This Court will not now substitute itself for the jury. We affirm the jury's award of attorney's fees of $15,000 to Pruett and $14,250 to West. Cain's points of error four and eleven are overruled.

Cain further argues that the trial court erred in awarding appellate attorney's fees in the amended judgment. At trial, the jury awarded zero appellate attorney's fees. At oral argument, counsel for Pruett stated that the appellate fees of $50,000 in the amended judgment were the result of a clerical error. At trial, Corley testified that $7,500 would be a reasonable fee for appeal to the court of appeals, $2,500 would be a reasonable fee for making application for a writ of error to the supreme court, and $5,000 would be a reasonable fee to go to the supreme court. The jury had the opportunity to consider this evidence, yet the jury found that no appellate attorney's fees were merited. Pruett and West moved for judgment notwithstanding the verdict on the issue of appellate attor-

ney's fees. The trial court granted the motion and entered an amended judgment that awarded a total of $50,000 in appellate attorney's fees to Pruett and West.

A trial court may disregard a jury's findings and grant a motion for judgment notwithstanding the verdict only when a directed verdict would have been proper. Tex.R.Civ.P. 301. A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment. *Morey v. Page*, 802 S.W.2d 779, 783 (Tex.App.—Dallas 1990, no writ). A motion for judgment non obstante veredicto (j.n.o.v.) and the judgment rendered must be predicated on either the presence of conclusive evidence that entitles the moving party to judgment as a matter of law or on the absence of any evidence of probative force to support an issue that the opposing party must prove in order to prevail. *CPS Int'l, Inc. v. Harris & Westmoreland*, 784 S.W.2d 538, 541 (Tex.App.—Texarkana 1990, no writ). A plaintiff is not entitled to j.n.o.v. unless facts are conclusively established in his favor. *Id.*

A party with the burden of proof who complains about a jury's answer by a motion for j.n.o.v. must do so on the basis that he is entitled to such an answer as a matter of law. *Id.* On motion for j.n.o.v., all evidence must be considered in a light most favorable to support the jury verdict, every reasonable intendment deducible from the evidence is to be indulged in favor of the verdict, and only evidence and inferences that support the jury finding should be considered with all contrary evidence and inferences being rejected. *Id.; Dodd v. Texas Farm Prods. Co.*, 576 S.W.2d 812, 814–15 (Tex.1979); Tex.R.Civ.P. 301.

When the appellate court determines that j.n.o.v. was erroneously entered, the court must reverse the judgment of the trial court and enter judgment in harmony with the verdict, unless appellee presents a cross-point sufficient to vitiate the jury's verdict. *CPS*, 784 S.W.2d at 542; *see also* Tex. R.Civ.P. 324(c); *Burns v. Resolution Trust Corp.*, 880 S.W.2d 149, 151 (Tex.App.—Houston [14th Dist.] 1994, no writ).

In this case, the evidence did not conclusively establish that $50,000 was a reasonable and necessary award for appellate attorney's fees. To the contrary, there was no evidence presented at trial in support of the $50,000 award. This is hardly surprising in light of the fact that counsel for Pruett and West acknowledge that the inclusion of a $50,000 award in the judgment was the result of a clerical error.

Moreover, we conclude that Pruett and West did not conclusively establish any certain amount for an award for appellate attorney's fees. There was ample evidence to support the jury's award of zero appellate attorney's fees. The jury heard evidence that Pruett's and West's attorneys were working on a contingency fee. Based on this, the jury could find that an appeal of this case would be part of the services for which Pruett's and West's attorneys agreed to accept a percentage of the final judgment. Judgment notwithstanding the verdict was improper in this case. Therefore, we sustain Cain's points of error one and two, and reverse that portion of the judgment awarding appellate attorney's fees and enter judgment in harmony with the jury's verdict of zero appellate attorney's fees.

Finally, we address Cain's point of error seventeen in which he argues that counsel for Pruett and West struck the sole African–American prospective juror and were unable to produce an adequate explanation showing a racially neutral purpose as required by *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Supreme Court held that the reasoning of *Batson* and its progeny in criminal cases prohibiting the exercise of peremptory strikes for racial purposes applies in civil cases. *Edmonson*, 500 U.S. at 631, 111 S.Ct. at 2088–89; *see Powers v. Palacios*, 813 S.W.2d 489, 491 (Tex.1991); *see generally Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam).

To invoke the protection of *Edmonson*, a party must raise an inference of purposeful discrimination, and the trial court must determine that a prima facie case of discrimination exists by virtue of the striking party's use of its peremptory strikes. A party establishes a prima facie case of discrimination by showing facts and any relevant circumstances that raise an inference that the striking party used peremptory strikes to exclude prospective jurors on account of their race. *See Batson*, 476 U.S. at 96, 106 S.Ct. at 1722–23; *Mead v. State*, 819 S.W.2d 869, 870 (Tex.Crim.App.1991); *Keeton v. State*, 724 S.W.2d 58, 65 (Tex.Crim. App.1987). When a party establishes a prima facie case, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *Keeton*, 724 S.W.2d at 65. The explanation must be race-neutral; it need not be persuasive or even plausible. *Purkett*, 514 U.S. at ——— ———, 115 S.Ct. at 1770–71. If a race-neutral explanation is tendered, the complaining party may offer evidence showing that the explanation is a sham or pretext for discrimination. The trial court must then decide whether the opponent of the strike has proved racial discrimination. *Id.*

On appeal, the trial court's decision on the issue of discriminatory intent is given great deference because a determination of the issue of purposeful discrimination depends on assessing the credibility and the content of the striking party's explanation and all other relevant facts and circumstances. *Alexander v. State*, 866 S.W.2d 1, 8 (Tex.Crim.App.1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1869, 128 L.Ed.2d 490 (1994). The reviewing court will not disturb the trial court's decision unless it is clearly erroneous. *Hernandez v. New York*, 500 U.S. 352, 369, 111 S.Ct. 1859, 1871–82, 114 L.Ed.2d 395 (1991); *Whitsey v. State*, 796 S.W.2d 707, 727 (Tex.Crim.App.1989) (op. on reh'g). In other words, a reviewing court must not reverse a trial court's *Edmonson* decision unless the reviewing court is left with a firm conviction that a mistake has been committed. *Harris v. State*, 827 S.W.2d 949, 955 (Tex.Crim. App.), *cert. denied*, 506 U.S. 942, 113 S.Ct.

381, 121 L.Ed.2d 292 (1992); *Whitsey*, 796 S.W.2d at 721.

After counsel for Cain objected to his opponents' use of the peremptory challenge as racially motivated, the trial court conducted a hearing at which counsel for Pruett and West testified to race-neutral reasons for exercising the peremptory challenge. The trial court found that counsel for Pruett and West did not exercise the peremptory challenge on the basis of race. We therefore examine the race-neutral explanations offered by counsel for Pruett and West to determine whether they are pretexts for a racially-motivated peremptory challenge. *See Whitsey*, 796 S.W.2d at 713.

Counsel for Pruett and West struck the African–American prospective juror in this case because he was too "conservative." The record shows that the prospective juror was a former police officer and was formerly in the military. Further, counsel for Pruett stated that the potential juror appeared hesitant and reserved concerning one of the elements of damages. This record supports the trial court's finding of no purposeful discrimination, and therefore we cannot say that those findings were clearly erroneous. The explanations offered by counsel for Pruett and West were racially neutral, logically related to the case to be tried, and based directly on the responses of the prospective juror in question. Cain's point of error seventeen is overruled.

Accordingly, we reform the judgment of the trial court to reflect an award of $3,133.23 in damages and $15,000 in attorney's fees to Pruett and $1,771.92 in damages and $14,250 in attorney's fees to West.

As reformed, we affirm the judgment of the trial court.